Good morning, Your Honor. Zandra Lopez of the Federal Defenders in San Diego on behalf of Mr. Gamino. I'd like to reserve two minutes of my time for rebuttal. The central issue in this case is whether the District Court abused its discretion in allowing prior border crossings of Mr. Gamino's truck into evidence through tax records and the testimony of a rebuttal witness. The evidence of the prior border crossings were subject to 404B notice requirements, which were not met by the government. And the government could not get around this important requirement by simply alleging that it was being used for impeachment purposes. The prior border crossings were prior acts subject to 404B because not only was the government using these prior crossings to show bad character of Mr. Gamino, but they were also being used to show that he was acting in a common scheme or pattern in conformity with the actions of the date of his arrest. Now, although the government did not specifically tell the District Court that it was using this evidence to show a common scheme or pattern, it did so implicitly, both in its arguments to the District Court and in its examination of Mr. Gamino on cross and the examination of its rebuttal witness. For example, prior to the evidence coming in at sidebar when government's counsel was making arguments to the District Court in allowing this evidence in, government's counsel stated it was relevant because the car was crossing, quote, at the same strange early morning hours, 5 a.m., 445 a.m., all the same times, similar to the defendant's crossings on this day, and that's an excerpt of Record 89. Then, when examining Mr. Gamino, not only did the government go into the prior crossings between April 14th and April 24th, but the government's counsel specifically went into the timing, 5 o'clock, 545, 445, similar to the date of his arrest. She did the same thing when she was directing the rebuttal witness. The only reason why the timing is relevant is to show this common scheme or pattern. This is similar to what the prosecution did in Vega, to show a common scheme of how she was doing business. Government's counsel, again, here, used it to show a common scheme. But unlike Vega, this was also used to show bad character. During the rebuttal, the government brought in the fact about the prostitution. So not only did the jury get in an inference that Mr. Gamino was crossing six times between April 14th and April 24th, but he was doing it because he went to Mexico to see a prostitute, like the time, like the night prior to the date of his arrest. This is clearly 404B. Defense counsel repeatedly asked for notice of 404B. It was never received. Now, the government tried to circumvent this requirement by alleging that it was being used for impeachment purposes. It's improper impeachment for two reasons. First of all, as I stated, it's 404B evidence, and the notice requirement was not met. And Vega clearly states that if evidence is being introduced for 404B purposes, they must provide notice, regardless of the fact of whether it's being used for impeachment or rebuttal. The government was not allowed to use that evidence in the case in chief. So what, did he have three or four days to look at this stuff before the defense case? How was he prejudiced by not getting the 404B notice? Well, he was prejudiced because it was given to defense counsel, I believe, approximately two days prior to trial. They didn't have an opportunity to investigate those text records. And but 404B not only requires that the government provide the evidence that's going to be introduced, but they have to provide notice that it will be used for 404B purposes. That wasn't done in this case. The government introduced Wait a minute. Was it used for 404B purposes when it was just brought in on Cross? It was used for 404B purposes, as I stated, to show this common scheme or pattern and to show his bad character. After the fact. In other words, after it came in, that's what they used it for. You mean for impeachment purposes? It came in. They may have tried before. But I think our collective understanding is that that was excluded on the direct case in chief. Now, you're saying they backdoored it in to achieve what they stated their purpose was. But don't we, if it was proper impeachment, then why do we reach 404B? Well, I don't believe it was proper impeachment. Okay. So but you have to win on that. We can't just say because it came in on rebuttal. Right. Let's talk about that. What did what was the testimony on direct? The testimony on direct was simply that Mr. Gamino allowed his uncle to use his truck, that he, that Mr. Gamino had a construction job about two and a half weeks prior to his arrest, and that he was in Chicago a week prior to his arrest. Nowhere during his direct examination did Mr. Gamino discuss the prior crossings of his truck, of his personal prior crossings, or of his uncle's border crossings. That didn't come in. That only came in through cross-examination. And then we have to get to the issue of how did we get to April 14th through April 24th? Was that within two and a half weeks, that those dates? April 14th falls both one and a half weeks prior to the arrest, all the way up to three weeks prior to the arrest. It's within the timeframe that he testified to on direct. Correct. But if we look at the cross-examination of Mr. Gamino by government's counsel, Mr. Gamino explicitly stated that he could not remember the exact date. He could not remember. He was trying to explain in his direct how it might have, the truck might have crossed. I suppose. Well, that never really came up in direct. Here's my problem. I'm trying to figure out what we have to decide here. The district court didn't permit it to come in as 404B evidence. Wasn't that the ruling? That's correct. Yeah. So then it comes in an impeachment, a cross-examination, and the government says, I'm using this for impeachment. And the district court then lets it in, is that right, for impeachment? That's correct. Now, is what we have to decide whether that was an abuse of discretion? Right. Now, why was that an abuse of discretion? Well, it's an abuse of discretion because in order for it to be impeachment, it has to contradict the testimony provided by Mr. Gamino on direct. It didn't contradict that testimony. The only way we get to that is through the cross-examination of government's counsel. And this Court has held that extrinsic evidence cannot come into impeached testimony that's elicited through cross-examination because there's a concern that opposing counsel may manipulate the questioning to trap an unwary witness into providing statements. And if we look at the cross-examination, although Mr. Gamino repeatedly stated he could not remember the dates, the government wanted to lock it down between April 14th and April 24th. And in response at Excerpt of Record 91, Mr. Gamino stated, again, I don't remember the exact dates question, but somewhere around there, answer, probably. She calculated April 14th through April 24th. Not only is that much broader than the two and a half weeks that Mr. Gamino testified, it's also contradictory to testimony given by him on cross-examination. In calculating his trip to Chicago, which he said was a week prior to his arrest, again, he said, I can't remember the exact dates. But the government pressed on, quote, if I am accurate, that would be Sunday 25th of April through Saturday the 1st of May, end quote. That's at Excerpt of Record 79 through 80. Mr. Gamino said he could not remember the exact dates, so she pressed on. So when was your last construction done? And he said it was before going to Chicago, and it was a construction job of three days. So according to the government's own calculations, if he left for Chicago on the 25th of April, his construction job would have been on the 22nd, 23rd, and the 24th. Regardless of that fact, the government was allowed to bring in a much wider scope of dates between April 14th and April 24th and cross-examine him on those dates. And that's exactly what she did. Now, I'd like to reserve my remaining time for about a minute. Okay. Please, the Court. Martha Packold for the United States. First, the text evidence was introduced properly as impeachment by contradiction under Rule 607. And according to this Court's holdings, even evidence that is otherwise precluded under Rule 404 may come in as evidence under Rule 607 to rebut specific falsehoods that the defendant testifies to on direct and on cross-examination. So what was being rebutted here? It looks like the counsel was pushing to set up the impeachment, pushing on getting dates specific so that then they could bring in the tech records under that pretext. Help me out as to why I'm being ungenerous to the, or unduly suspicious of the AUSA's trial strategy. On direct, the defendant volunteered that he had been, that his last construction job was two and a half weeks before his arrest. And he was not clear on the specific dates, but that. The construction job was where? The construction job was clearly in Mexico, which he testified to. Or, I'm sorry, in the United States. I apologize. No, the construction was not in Chicago. Chicago was a trip to visit his family immediately before the arrest. But the. So he said that the construction job was in the United States two and a half weeks before. Right. Which would account for crossings that were made two and a half weeks before and prior. Right. Correct. But, and there was a place in the transcript at ER 103 where the, where the prosecutor says, when I heard two and a half weeks, my ears perked up because I knew about the text and it was clear from the text that the text showed that crossings occurred as far, in the entire range between three weeks before and all the way up until April 23rd, which was a week and a couple days before the actual arrest, going by the calendar. Another item is that the defendant testified, now this was not on direct, but he did testify at one point that he had arrived back from Chicago on the 29th of April. So, so the testimony that, or I'm sorry, the assertion that the specific week when he was in Chicago was the particular week immediately before his arrest is not correct according to the defendant's own testimony. So the point is just that the dates were not, the dates were not very clear from what the defendant's direct testimony was, but he did open the door by saying, I was, he, by placing himself in the United States in a timeframe roughly two and a half weeks before his arrest. So, so let me, let me, I'm sorry. All right, because I have a little trouble with this. Understanding this, he was attempting on direct to explain that, why the truck was crossing the border? No, he was, he was discussing the details of his work. He was clearly attempting to establish on direct that he had jobs in the United States, and the goal appears to have been to show that he was a hard worker and lived in the United States and had no reason to go to Mexico to transport drugs. And so he volunteered in response, discussing his work generally, his construction work. My last construction job was two and a half weeks before. Was he living in the United States? He was. He's a citizen. Okay. So the tech records show that he was going back and forth. The truck was. The truck was going back and forth. The truck was going back and forth during the period when he said he was in the United States. And I agree that he did not give specific, super specific dates on direct, but when he said two and a half weeks, that entitled the government in the district court's discretion to cross-examine him about what he meant by that time frame. And I think it was reasonable for the AUSA to think, gosh, two and a half weeks, that conflicts with the string of crossings that occurred on April 15th, 16th, 17th, 19th, 21st, and 23rd, which were all within the general two and a half week range. I mean, not precisely two and a half weeks, but in the general range. Anything in the record that would indicate that in letting this in ostensibly as impeachment, the district court was actually going back on its earlier ruling that it couldn't come in as 404B? No. All the references I've seen, and unfortunately I don't have a transcript of the eliminate hearing at which the, and I haven't seen in the record or transcript of that hearing at which the judge actually made this 404B compromise ruling. But all indications are that the judge said you can't, government, you can't bring this in on your direct case, on your case in chief, but we'll reserve the question of impeachment. Another item that the defendant testified to on direct was that his uncle had also raised a question in the AOSA's mind about then why would there be, his uncle who lived in Mexico, according to the direct testimony, had borrowed the truck that few times. And that in the district courts, the district court properly allowed cross-examination on that point as well to establish exactly how many times the truck had gone across the border. And in that cross-examination, the government established that he himself, the defendant testified that he himself had crossed only twice, meaning that the truck should have crossed a total of five or six times when, in fact, the text showed 18 crossings since the time that the defendant had bought the truck in March. Why did the testimony about the uncle? Is that indirect? The uncle, the existence of the uncle and that he was in Mexico were on direct, and that he had borrowed the truck three or four times. We believe that VEGA does not control this case and that it's distinguishable here, because in VEGA, the government was trying to show a common scheme or plan, and it was introducing the text records. It introduced the text records themselves and bank records showing that immediately after the crossings, the truck should have crossed. There was no such attempt here. There it was clearly a common scheme or plan, but here we were simply trying to rebut false statements, the two that I've pointed out, that the construction job was two and a half weeks earlier and that the uncle borrowed the truck three or four times that the defendant had invited by testifying on direct. More contradictory evidence came out on cross-examination that the defendant had previously admitted to these crossings in the six specific crossings in an interview, in a post-arrest interview. But we would just reiterate that these were not admitted to prove bad acts or bad character. And the information about the prostitute, which is on ER 86, was also volunteered by the defendant in response to a question on cross-examination about why he was there. We would also argue that even if the text was subject to 404B, the government gave reasonable notice. There was no prejudice to the defendant here. The text records were relatively straightforward, and the defendant has never explained how more than the time he had would have allowed him to prepare. He did not seek a continuance of trial, for example, arguing that he needed more evidence. And the rule only requires the government to give notice of the general nature of the text of the evidence, which the government did by providing the evidence. And I would call this Court's attention to a case called Erickson at 75F3-470, where this Court allowed turning over the evidence to count as 404B notice. We would also argue that any error here was harmless. Incidentally, our brief said the wrong standard for harmless error. We said the constitutional standard and not the nonconstitutional standard, but we believe that even under the higher standard, that the standard makes no difference and that even under the higher standard, the defendant admits that this evidence was not integral to the case. This is confirmed by the closing arguments in which we did not hammer the text evidence. We instead concentrate on the fact that this defendant was the driver and sole occupant of a truck containing a substantial amount of marijuana that was hidden carefully and that he was nervous. We did not concentrate on the text. We mentioned it, or we mentioned the fact that he had given contradictory evidence, but that was part of a larger presentation. The text evidence never came in, and the Court gave a very careful limiting instruction, which we think is also very important in establishing harmlessness should this Court need to reach that issue. With respect to the safety valve, we think that the defendant did not clearly or did not truthfully and completely provide all information to the government. And with respect to the booker, the government does not object to a limited remand. Thank you. Thank you. I'd just like to point out a couple of things. First, on direct he did testify they had a construction job about two and a half weeks. That did permit the government to try to find out what that meant. And the government did, and Mr. Gamino testified that his construction job was about, it was three days prior to his trip to Chicago. That would mean, according to the government's own calculations, that his construction job was only between April 22nd, 23rd, and 24th. Yet all of this other evidence came in of April 14th to 24th. And I know it's confusing, and I believe that was confusing to Mr. Gamino. It would have been okay if it had come in with respect to those three days? Right. It would have been okay, but it didn't. I think it only encompassed one of the three days. I was just trying to understand, is it your position that they could have impeached with respect to any of the days that were within what he opened up for pursuit on cross, but they couldn't go beyond that, and that's what they did. They expanded it. Is that your point? That's correct. And if it had been narrowed down, there's only one tech record showing a crossing? Right. Was there an objection to the overbreadth of the scope? There was objections throughout the testimony of Mr. Gamino on cross-examination, but I think that the one text record comes in just because I'm calculating based on the government's calculation as to when his trip was. But even being very lenient in using the government's information, even though then it was only one day. And also on direct, he did testify that his uncle borrowed his truck three or four times, but that says nothing about how many times the truck crossed the border. It doesn't say that. But that's the way it was interpreted by the government's counsel. And finally, although the government did provide the text records prior to trial, again, they didn't say what the purpose was. They just said it would be used for impeachment purposes. They never said it would be used for 404B. And I think it was used for 404B. There was a common pattern and scheme, and it was clearly used by the government to establish that. Thank you.
judges: Schroeder, Goodwin, Fisher